FILED _____ ENTERED \_\_\_\_\_
LOGGED _____ RECEIVED \_\_\_\_\_

Case 1:18-mj-02678-ADC   Document 3   Filed 10/16/18   Page 1 of 9

OCT 16 2018

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

18 - 2 6 7 8 - ADC

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Task Force Officer ("TFO") David Azur, being duly sworn, depose and state as follows:

1. This affidavit is submitted in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 for two cellular telephones, specifically, **(1) ZTE cellular phone, model N9136, MEID DEC: 256691622502564914, MEID HEZ: 99000881272332, S/N 325774620BF5;** and **(2) Samsung cellular phone, model SM-B311V, FCC ID: A3LSMB311V, MEID HEX: A00000477BB5A7** (hereinafter, the "**Subject Electronic Devices**"), which are also identified in Attachment A and are currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), located at 6797 Dorsey Road, Elkridge, Maryland 21075. Law enforcement officers seized the **Subject Electronic Devices** from DEARNTA ANTONIO BATTLE following his arrests for, among other charges, possession of a firearm by a felon, in violation of Maryland law.

2. The warrant authorizes the search of the **Subject Electronic Devices** for the purpose of identifying and examining information, as more particularly described in Attachment B, that constitutes evidence, fruits, and instrumentalities related to the crimes of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

3. The facts in this affidavit come from my knowledge, training and experience, personal observations during the course of the investigation, and information obtained from witnesses and other agents and law enforcement officers. This affidavit is intended to show probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Rather, this affidavit contains only such information as is necessary to show that there is probable cause to believe that the memory and content of the **Subject Electronic Devices** will

1

contain evidence, fruits, and instrumentalities of the aforementioned crimes, as further described in Attachment B.

## AGENT BACKGROUND

4. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7)—that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Section 2516 of Title 18 of the United States Code.

5. I have been employed by the Baltimore Police Department since December 28, 1993. After completion of entrance level Basic Training, I was assigned to the Southwestern District Patrol Division, where I made numerous arrests for handgun violations, narcotic violations and violent offenders. In 1997, I was assigned to a multi-jurisdictional Auto Theft Task Force, where I continued to arrest violent offenders. In June of 2007, I was assigned to the Violent Crime Impact Division where I began to work with the High Intensity Drug Trafficking Area ("HIDTA") Task Force and became a Task Force Officer with the ATF. I have received specialized training from the ATF, Federal Bureau of Investigation (FBI), and the Drug Enforcement Agency (DEA), as well as the Multi-Jurisdictional Drug Task Force. I currently investigate Federal Firearm and Narcotics violations as an ATF Task Force Officer. My coursework included basic investigative techniques, interviewing, constitutional law, federal courtroom procedures, federal firearms laws, recognition of controlled substances, methods by which controlled substances are manufactured, distributed, and sold, firearms and ammunition identification, report writing, field operations, undercover techniques, and electronic and physical surveillance techniques.

6. I have participated in investigations focusing on illegal firearms and ammunition. I have conducted covert surveillance of suspected firearms traffickers; observed interviews with

individuals involved in gangs and the firearms trafficking trade, and have been a member of surveillance teams. I have also participated in the execution of several federal search and arrest warrants involving firearms and violent offenders, and have participated in the seizure of firearms and ammunition. Through my training, education, and experience, I have become familiar with the manner in which firearms and ammunition are transported, stored, and distributed, and the manner in which firearms traffickers communicate with each other.

7. I know, based on my training and experience, that individuals involved with illegal firearm and ammunition possession frequently use cellular telephones, communication devices, and other electronic media storage to further their illegal activities. Persons who have firearms tend to take photographs of the firearms and ammunition, which photographs are stored on their electronic devices. Those individuals may communicate with others in reference to the purchase or sale of firearms through their electronic devices. Individuals found with firearms and ammunition also often post pictures of evidence, fruits, and instrumentalities of their crimes on social media to show others with whom they are connected.

8. Further, individuals involved in illegal activities tend to use their cellular devices to call or text accomplices before, during, and after a crime has been committed. Sometimes, when an individual commits a crime, an accomplice will be nearby to serve as a lookout for local police. The individual may then contact the accomplice via electronic device for assistance fleeing the crime scene. Additionally, an individual may communicate with another person to strategize and to attempt to hide belongings or merchandise from the crime committed. As mentioned, individuals tend to take photographic images of property or items taken in connection with crimes committed, to share that information with others, or to store it on electronic devices. More

specifically, I know that members of criminal activities use cellular telephones to further their objectives by:

    a.    Communicating with other co-conspirators by talking and by sending e-mail messages, text messages, and messages through social media (*e.g.*, Facebook);

    b.    Storing contact information of co-conspirators; and

    c.    Taking photographs and recording videos of co-conspirators and contraband.

## PROBABLE CAUSE

9.    On January 2, 2018, at approximately 2:35 a.m., Baltimore City Police Department ("BPD") officers were operating a marked patrol vehicle near Reisterstown Road in Northwest Baltimore when they initiated a traffic stop of a silver minivan that was being driven with its lights off. The minivan, which was registered to a woman named Crystal Shykera Jackson-Womack, pulled over into a gas station, and its engine was turned off.

10.    The BPD officers approached the minivan—one on the driver's side and one on the passenger's side. No one entered or exited the minivan as they approached it, and they discovered that the driver, later identified as BATTLE, was the only occupant. As the driver-side officer began speaking with BATTLE, the other officer observed a black handgun lying on the front passenger seat next to what was later determined to be the minivan's ignition key.

11.    BATTLE was placed under arrest and taken into custody. The handgun was removed from the minivan and later identified as a Sig Sauer P290RS semiautomatic pistol, bearing serial number 26C001048, and loaded with seven 9mm luger cartridges—of which five

were Hornady jacketed soft-point cartridges and two were Federal jacketed hollow-point cartridges.[1]

12. BPD officers recovered one cell phone from the center of the front of the minivan, the **ZTE cellular phone, model N9136, MEID DEC: 256691622502564914, MEID HEZ: 99000881272332, S/N 325774620BF5**, and another cell phone from the floor behind the front passenger seat, the **Samsung cellular phone, model SM-B311V, FCC ID: A3LSMB311V, MEID HEX: A00000477BB5A7**. Officers also discovered men's shoes and clothing in the trunk of the minivan.

13. In a February 25, 2018, jail call, BATTLE described his arrest to another person. BATTLE stated that he was driving someone else's vehicle, that the gun was already in the vehicle, and that it did not belong to him. BATTLE further stated that he fell asleep in the car, woke up, began to drive, and was then pulled over by police.

14. Subsequent investigation revealed that Battle is a rap artist who goes by the name "Tay Battle." In a track titled "Show No Love," made publicly available on SoundCloud, a social media website, on April 9, 2017, Battle raps about "packing" a 9 mm handgun, and states, "'bought a gun . . . 'bout to go and get some cash with it."

15. Since the arrest of BATTLE, no one has had access to the **Subject Electronic Devices** in order to destroy, delete, or otherwise tamper with any data contained therein. Therefore, I believe that any data and information contained on the **Subject Electronic Devices** may still be recovered through a forensic analysis of the **Subject Electronic Devices**. I submit

---

[1] BATTLE is prohibited from possessing a firearm or ammunition as a result of, among other convictions, his January 13, 2010, armed robbery conviction in the Circuit Court of Maryland for Baltimore City.

that there is probable cause to believe that the **Subject Electronic Devices** recovered from BATTLE contain evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 922(g).

## **CONCLUSION**

WHEREFORE, in consideration of the facts presented, I respectfully request that this Court issue a warrant for the search of the **Subject Electronic Devices**, as further described in Attachment A, and authorize the search and seizure of certain evidence and information therefrom, as described in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

David F. Azur, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Signed and sworn to before me this 1st day of October 2018.

Honorable A. David Copperthite
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is:

    **(1) ZTE cellular phone, model N9136, MEID DEC: 256691622502564914, MEID HEZ: 99000881272332, S/N 325774620BF5,** and

    **(2) Samsung cellular phone, model SM-B311V, FCC ID: A3LSMB311V, MEID HEX: A00000477BB5A7,**

(the "**Subject Electronic Devices**"), seized by the Baltimore City Police Department from DEARNTA ANTONIO BATTLE on January 2, 2018, and currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), located at 6797 Dorsey Road, Elkridge, Maryland 21075.

## ATTACHMENT B

This warrant authorizes the search and seizure of the following information and electronically stored data contained in the **Subject Electronic Devices**, described in Attachment A:

a. digital images and videos;

b. records of incoming and outgoing voice communications;

c. records of incoming and outgoing text messages;

d. the content of incoming and outgoing text messages;

e. voicemails;

f. voice recordings;

g. contact lists;

h. data from third party applications (to include messaging programs);

i. any location data; and

j. the ISMI and other numbers located on or behind the device's SIM card;

that are related to the investigation of violations of 18 U.S.C. § 922(g), or any other violation of state or local law, as more fully described in the affidavit.

Because of the possibility that the files examined pursuant to the warrant will include information that is beyond the scope of the criminal violations for which the United States has demonstrated the existence of probable cause to search, the search shall be conducted in a manner that minimizes to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search are not viewed.

While this warrant does not prescribe the specific search protocol to be used, it does contain limitations on what government investigators may view during their search, and the searching investigators shall be obligated to document the search methodology used in the event that there is a subsequent challenge to the search that was conducted, pursuant to the following procedure:

With respect to the search of any digitally/electronically stored information that is seized pursuant to this warrant, and described in Attachment B hereto, the search procedure shall include such reasonably available techniques designed to minimize the chance that the government investigators conducting the search will view information that is beyond the scope of the criminal violations for which probable cause to search exists.

The following list of techniques is a non-exclusive list illustrating the search methodologies that may avoid an overbroad search, and the government may use other procedures that, like those

**18-2678-ADC**

listed below, minimize the review of information not within the list of data to be seized as set forth above:

    a.    Use of computer search methodology to conduct an examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth herein by specific date ranges, names of individuals, or organizations;

    b.    Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

    c.    Physical examination of the storage device, including digitally surveying various file directories and the individual files they contain to determine whether they include data falling within the list of data to be seized as set forth herein; and

    d.    Opening or reading portions of files that are identified as a result of conducting digital search inquiries in order to determine their relevance.